Rachel Abrams (SBN 209316)
**LEVIN SIMES ABRAMS LLP**
1700 Montgomery Street, Suite 250
San Francisco, California 94111
Telephone: (415) 426-3000
Facsimile:  (415) 426-3001
Email: rabrams@levinsimes.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOHN FASHING,**<br><br>               Plaintiff,<br><br>v.<br><br>**HOWMEDICA OSTEONICS CORPORATION,**<br><br>               Defendant. | Case Number:<br><br>**COMPLAINT AT LAW AND JURY DEMAND** |

## COMPLAINT AT LAW AND JURY DEMAND

NOW COMES the Plaintiff, JOHN FASHING, by and through his undersigned attorneys, complaining against Defendant HOWMEDICA OSTEONICS CORPORATION hereinafter referred to collectively as "Defendant"), and alleges as follows:

## PARTIES

1. JOHN FASHING is a resident of the State of California.

2. JOHN FASHING was implanted with a Stryker LFIT V40™ femoral head and a Stryker ACCOLADE TMZF Stem (collectively referred to as "HIP SYSTEM") in the State of California.

3. JOHN FASHING's HIP SYSTEM was revised in the State of North Carolina.

4. JOHN FASHING suffered and continues to suffer injuries as a result of the failure of the HIP SYSTEM in the State of California.

5. At all relevant times, HOWMEDICA was a New Jersey Corporation.

6. At all relevant times, HOWMEDICA's operations were headquartered in the State of New Jersey.

7. At all relevant times, HOWMEDICA controlled the sales and distribution of the HIP SYSTEM from the state of New Jersey.

8. HOWMEDICA conducts business in the state of California as STRYKER ORTHOPAEDICS.

9. At all relevant times, HOWMEDICA was duly registered and/or licensed to do business in the State of California.

10. On information and belief, HOWMEDICA distributes or sells the HIP SYSTEM from distribution facilities in the states of California.

11. On information and belief, HOWMEDICA applied for and received any necessary licenses to conduct business in the State of California.

12. At all relevant times, HOWMEDICA has been the exclusive sales agent and distributor for the HIP SYSTEM in Illinois.

13. Defendant STRYKER CORPORATION is a corporation organized and existing under the laws of Michigan, having its principal place of business located at 2825 Airview Boulevard, Kalamazoo, Michigan 49002 and conducts business throughout the United States, including the State of California.

14. Defendant STRYKER SALES CORPORATION is a corporation organized and existing under the laws of Michigan, having its principal place of business located at 2825 Airview Boulevard, Kalamazoo, Michigan 49002 and conducts business throughout the United States, including the State of California.

15. Defendant STRYKER SALES CORPORATION is a wholly owned subsidiary of STRYKER CORPORATION.

16. Defendant HOWMEDICA is a corporation organized and existing under the laws of New Jersey, having its principal place of business located at 325 Corporate Drive, Mahwah, NJ 07430 and conducts business throughout the United States, including the State of California.

17. Defendant HOWMEDICA is a wholly owned subsidiary of STRYKER CORPORATION.

18. Defendant STRYKER IRELAND LIMITED is a foreign corporation that is also a wholly owned subsidiary of STRYKER CORPORATION.

19. At all relevant times, STRYKER IRELAND LIMITED conducted research, design and/or manufacturing of the HIP SYSTEM at issue in this lawsuit.

20. Upon information and belief, at all times herein mentioned, the employees of Defendant, their subsidiaries, affiliates, and other related entities, as well as the employees of the Defendant subsidiaries, affiliates, and other related entities, were the agents, servants and employees of Defendants, and at all relevant times, were acting within the purpose and scope of said agency and employment. Whenever reference in this Complaint is made to any act or transaction of Defendant, such allocations shall be deemed to mean that the principals, officers, employees, agents, and/or representatives of the Defendant committed, knew of, performed, authorized, ratified and/or directed such transactions on behalf of Defendant while actively engaged in the scope of their duties.

21. This products liability lawsuit seeks compensatory damages on behalf of JOHN FASHING, who was implanted with an artificial hip replacement system using components known as the ACCOLADE™ Stem and LFIT V40™ Femoral Head ("HIP SYSTEM"). These are components of the HIP SYSTEM that the DEFENDANT designed, manufactured, marketed, sold and distributed.

**JURISDICTION AND VENUE**

22. PLAINTIFF brings this complaint under federal diversity jurisdiction, 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of costs and interest. PLAINTIFF is a citizen and resident of the state of California.

23. Venue is proper in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391(a) and (c) because a substantial part wrongful acts or omissions upon which this lawsuit is based occurred in this District, DEFENDANT has substantial, systematic, and continuous contacts in this District, and PLAINTIFF is a resident of this District.

**COMMON ALLEGATIONS**

24. The hip joint is where the femur connects to the pelvis. The joint is made up of the femoral head (ball like structure at the top of the femur), rotating within the acetabulum (a cup-like structure at the bottom of the pelvis). In a healthy hip, both the femur and the acetabulum are strong, and the rotation of the bones against each other is cushioned and lubricated by cartilage and fluids. Over time, age and wear break down the cartilage. This forces the bone of the femur to rub directly against the bone of the acetabulum, and it can cause severe pain and immobility.

25. A total hip replacement replaces the body's natural joint with an artificial one, usually made out of metal and plastic. A typical total hip replacement system consists of four separate components: (1) a femoral stem, (2) a femoral head, (3) a liner and (4) an acetabular shell. The surgeon hollows out a patient's femur bone, the femoral stem is implanted. The femoral head is a metal ball which is fixed on top of the femoral stem. The acetabular shell fits into the hip socket, with the liner locked into the shell. The femoral head forms the hip joint when it is placed inside the polyethylene liner and acetabular shell.

26. The HIP SYSTEM implant design is more prone to in vivo corrosion and mechanical wear when implanted into a human being than hip devices manufactured by other companies.

27. The corrosion and wear debris produced by the HIP SYSTEM causes the surrounding tissue to become damaged and necrotic.

28. The HIP SYSTEM and related components were approved under a process by the Food and Drug Administration (hereinafter referred to as the "FDA") known as a 510(k). A 510(k) medical device does not have to go through the rigors of a clinical study to gain approval by the FDA.

29.     DEFENDANT did not conduct a clinical trial of the HIP SYSTEM before putting it on the market for use in patients in the United States.

30.     An article entitled, "Raised levels of metal ions in the blood in patients who have undergone uncemented metal-on-polyethylene Trident-ACCOLADE total hip replacement" was published in January of 2014. The authors of the article found high concentrations of metal in the blood of patients that had an ACCOLADE™ and V40™ devices implanted in their body. The authors discontinued use of the products and notified DEFENDANT of the results. DEFENDANT have not notified patients of the results of this study or the dangers of the ACCOLADE™ and V40™ devices.

31.     On or about August 29, 2016, one or more of DEFENDANT issued a recall of certain variations of the LFIT CoCr Femoral Heads. Among the potential hazards identified in the recall are "Excessive Metallic Debris." Among the patient harms identified in the recall are "Adverse Local Tissue Reaction" and "Revision to alleviate hazardous situation."

32.     Before NOVEMBER 2, 2012, JOHN FASHING began medical treatment for right hip arthritis with MICHAL BANFFY, M.D.

33.     Before NOVEMBER 2, 2012, MICHAL BANFFY, M.D., an orthopaedic surgeon licensed to practice medicine in the State of California, through his experience and training in the practice of medicine, indicated JOHN FASHING met the criteria for a total hip replacement on his right hip.

34.     On or about NOVEMBER 2, 2012, MICHAL BANFFY, M.D., implanted the DEFENDANT HIP SYSTEM into the right hip of JOHN FASHING at Torrance Memorial Hospital in Torrance, California.

35.     At all relevant times and before the implantation of the HIP SYSTEM in the PLAINTIFF, DEFENDANT knew that the HIP SYSTEM was defective and harmful to consumers.

36.     At all relevant times and before the implantation of the HIP SYSTEM in the PLAINTIFF, DEFENDANT had regular and frequent communications from surgeons who had

implanted the HIP SYSTEM, including PLAINTIFF's surgeon, regarding failures and complications of the HIP SYSTEM.

37. Sometime after NOVEMBER 2, 2012, JOHN FASHING learned that his HIP SYSTEM failed and needed to be revised with another hip prosthesis.

38. On or about September 10, 2018, William Jiranek, M.D., an orthopaedic surgeon licensed to practice medicine in the State of North Carolina, removed certain components of the HIP SYSTEM from JOHN FASHING and replaced them with new components at Duke University Hospital in Durham, North Carolina.

39. As a direct and proximate result of DEFENDANT wrongful conduct, JOHN FASHING was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to suffer device-related complications; to expend money for medical care in the past and in the future; furthermore, JOHN FASHING was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time sustained and will continue to sustain severe physical injuries, severe emotional distress, mental anguish, economic losses and other damages for which he is entitled to compensatory damages in an amount to be proven at trial.

## COUNT ONE – STRICT PRODUCTS LIABILITY MANUFACTURING DEFECT

40. JOHN FASHING adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows:

41. At all times material hereto, the DEFENDANT was the manufacturer, distributor, seller, and/or supplier of one or more defective components used in JOHN FASHING's body.

42. The HIP SYSTEM or components manufactured, sold, distributed, supplied, and/or placed in the stream of commerce by the DEFENDANT were defective in manufacture and construction when they left the hands of the DEFENDANT in that they deviated from product specifications and/or applicable requirements for these medical devices and posed a serious risk of injury and/or death.

43. DEFENDANT knew or reasonably should have known that the HIP SYSTEM, as manufactured or constructed, was defective and posed an unreasonable risk of harm to individuals, including JOHN FASHING, who used the HIP SYSTEM as intended by DEFENDANT.

44. As a direct and proximate result of DEFENDANT wrongful conduct, JOHN FASHING was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to suffer device-related complications; to expend money for medical care in the past and in the future; furthermore, JOHN FASHING was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time sustained and will continue to sustain severe physical injuries, severe emotional distress, mental anguish, economic losses and other damages for which he is entitled to compensatory damages in an amount to be proven at trial.

## COUNT TWO – STRICT PRODUCTS LIABILITY
## DESIGN DEFECT

45. JOHN FASHING adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows:

46. The HIP SYSTEM, as manufactured and supplied by DEFENDANT, was defective in design and formulation in that, when it left the hands of the DEFENDANT, the foreseeable risks of the product exceeded the benefits associated with its design or formulation, or it was more dangerous than an ordinary customer would expect and/or failed to comply with applicable requirements for these medical devices.

47. The foreseeable risks associated with the design or manufacture of the HIP SYSTEM include, but are not limited to, the fact that the design or manufacture of the HIP SYSTEM is more dangerous than a reasonably prudent consumer would expect when used in its intended manner and/or it failed to comply with applicable requirements. The HIP SYSTEM design results in an increased risk of injury due to device failure.

48. The HIP SYSTEM was not reasonably safe as intended to be used;

49. The HIP SYSTEM had an inadequate design for the purposes of hip replacement;

50. The HIP SYSTEM contained unreasonably dangerous design defects, including an inherently unstable and defective design, which resulted in an unreasonably high probability of early failure;

51. The HIP SYSTEM's unstable and defective design resulted in a hip prosthesis, which had risks which exceeded the benefits of the medical device;

52. The HIP SYSTEM's unstable and defective design resulted in a hip prosthesis which was more dangerous than the ordinary consumer would expect;

53. The HIP SYSTEM failed to perform in a manner reasonably expected in light of its nature and intended function, and subjected the JOHN FASHING to an unreasonable risk of harm beyond that contemplated by an ordinary person;

54. The HIP SYSTEM was insufficiently tested; and

55. The warning to JOHN FASHING and JOHN FASHING's implanting physicians about the dangers the HIP SYSTEM posed to consumers including JOHN FASHING were inadequate. The inadequacy of DEFENDANTs warnings includes, but are not limited to, the following:

  i. Insufficient to alert JOHN FASHING and his physicians as to the risk of adverse events and/or reactions associated with the HIP SYSTEM, subjecting JOHN FASHING to risks which exceeded the benefits of the HIP SYSTEM;

  ii. Contained misleading warnings emphasizing the efficacy of the HIP SYSTEM while downplaying the risks associated with it, thereby making use of the HIP SYSTEM more dangerous than the ordinary consumer would expect;

  iii. Contained insufficient and/or incorrect warnings to alert consumers, including JOHN FASHING, through their prescribing physicians regarding the risk, scope, duration, and severity of the adverse reactions associated with the HIP SYSTEM;

  iv. Did not disclose that it was inadequately tested;

  v. Failed to convey adequate post-marketing warnings regarding the risk, severity, scope, and/or duration of the dangers posed by the HIP SYSTEM;

  vi. Failed to contain instructions sufficient to alert consumers to the dangers they posed, and to give them the information necessary to avoid or mitigate those dangers;

  vii. DEFENDANT failed to adequately design and manufacture the HIP SYSTEM to ensure that it would not corrode, erode, deteriorate, disassociate, fret and/or fracture in the patient;

viii. DEFENDANT failed to adequately test the HIP SYSTEM to ensure that it would not corrode, erode, deteriorate, disassociate, fret and/or fracture in the patient; and

ix. DEFENDANT failed to promptly act upon reports of early failure such that the HIP SYSTEM continued to be implanted in unknowing patients by surgeons well after it should have been recalled or sales suspended;

56. As a direct and proximate result of the defective design of the DEFENDANT HIP SYSTEM or components and JOHN FASHING's use of the HIP SYSTEM as designed, manufactured, sold, supplied, and introduced into the stream of commerce by DEFENDANT and/or the DEFENDANT failure to comply with applicable requirements, JOHN FASHING suffered serious permanent physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

57. As a direct and proximate result of DEFENDANT wrongful conduct, JOHN FASHING was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to suffer device-related complications; to expend money for medical care in the past and in the future; furthermore, JOHN FASHING was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time sustained and will continue to sustain severe physical injuries, severe emotional distress, mental anguish, economic losses and other damages for which he is entitled to compensatory damages in an amount to be proven at trial.

**COUNT THREE**
**STRICT PRODUCTS LIABILITY: FAILURE TO WARN**

58. JOHN FASHING adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows:

59. At all times material hereto, the DEFENDANT was the manufacturer, designer, distributor, seller, and/or supplier of the HIP SYSTEM and sold the HIP SYSTEM knowing they would then be implanted in patients in need of a hip prosthesis.

60. The HIP SYSTEM was expected to, and did, reach the JOHN FASHING without substantial change or adjustment in its condition as designed, manufactured, and sold by the DEFENDANT.

61. The HIP SYSTEM as designed, developed, tested, manufactured, marketed, sold, and/or placed in the stream of commerce by DEFENDANT was in a dangerous and defective condition when it left the hands of the DEFENDANT and posed a threat to any user of the device.

62. JOHN FASHING was and is in the class of persons that DEFENDANT considered, or should have considered, to be subject to the harm caused by the defective nature of the HIP SYSTEM.

63. The HIP SYSTEM or components were implanted and used in the manner for which it was intended. JOHN FASHING's use of the HIP SYSTEM as intended by DEFENDANT resulted in severe permanent physical, emotional, financial, and other injuries to the JOHN FASHING.

64. DEFENDANT knew or should have known that the HIP SYSTEM as designed, developed, tested, manufactured, marketed, sold, and/or placed in the stream of commerce by DEFENDANT was in a dangerous and defective condition when it left the hands of the DEFENDANT and posed a threat to any user of the HIP SYSTEM.

65. DEFENDANT failed to provide adequate and timely warnings or instructions regarding the HIP SYSTEM and its known defects.

66. As a direct and proximate result of DEFENDANT wrongful conduct, JOHN FASHING was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to suffer device-related complications; to expend money for medical care in the past and in the future; furthermore, JOHN FASHING was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time sustained and will continue to sustain severe physical injuries, severe emotional distress, mental anguish, economic losses and other damages for which he is entitled to compensatory damages in an amount to be proven at trial.

### COUNT FOUR – NEGLIGENCE

67. JOHN FASHING adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows:

68. DEFENDANT designed, manufactured, marketed, detailed, and advertised, both to physicians and consumers, the HIP SYSTEM.

69. As a result, DEFENDANT had a duty to perform each of these functions reasonably and with reasonable and due care for the safety and well-being of patients in whom the devices would be implanted.

70. DEFENDANT failed to use reasonable and due care for the safety and well-being of those in whom the HIP SYSTEM would be implanted and is, therefore, negligent in the following respects:

71. The HIP SYSTEM was not reasonably safe as intended to be used;

72. The HIP SYSTEM had an inadequate design for the purposes of hip replacement;

73. The HIP SYSTEM contained unreasonably dangerous design defects, including an inherently unstable and defective design, which resulted in an unreasonably high probability of early failure;

74. The HIP SYSTEM's unstable and defective design resulted in a hip prosthesis, which had risks which exceeded the benefits of the medical device;

75. The HIP SYSTEM's unstable and defective design resulted in a hip prosthesis which was more dangerous than the ordinary consumer would expect;

76. The HIP SYSTEM failed to perform in a manner reasonably expected in light of its nature and intended function, and subjected the JOHN FASHING to an unreasonable risk of harm beyond that contemplated by an ordinary person;

77. The HIP SYSTEM was insufficiently tested; and

78. The warning to JOHN FASHING and JOHN FASHING's implanting physicians about the dangers the HIP SYSTEM posed to consumers including JOHN FASHING were inadequate. The inadequacy of DEFENDANTs warnings includes, but are not limited to, the following:

   i. Insufficient to alert JOHN FASHING and his physicians as to the risk of adverse events and/or reactions associated with the HIP SYSTEM, subjecting JOHN FASHING to risks which exceeded the benefits of the HIP SYSTEM;

ii. Contained misleading warnings emphasizing the efficacy of the HIP SYSTEM while downplaying the risks associated with it, thereby making use of the HIP SYSTEM more dangerous than the ordinary consumer would expect;

iii. Contained insufficient and/or incorrect warnings to alert consumers, including JOHN FASHING, through their prescribing physicians regarding the risk, scope, duration, and severity of the adverse reactions associated with the HIP SYSTEM;

iv. Did not disclose that it was inadequately tested;

v. Failed to convey adequate post-marketing warnings regarding the risk, severity, scope, and/or duration of the dangers posed by the HIP SYSTEM;

vi. Failed to contain instructions sufficient to alert consumers to the dangers they posed, and to give them the information necessary to avoid or mitigate those dangers;

vii. DEFENDANT failed to adequately design and manufacture the HIP SYSTEM to ensure that it would not corrode, erode, deteriorate, disassociate, fret and/or fracture in the patient;

viii. DEFENDANT failed to adequately test the HIP SYSTEM to ensure that it would not corrode, erode, deteriorate, disassociate, fret and/or fracture in the patient; and

ix. DEFENDANT failed to promptly act upon reports of early failure such that the HIP SYSTEM continued to be implanted in unknowing patients by surgeons well after it should have been recalled or sales suspended;

79. The above conduct illustrates DEFENDANT failure to exercise reasonable and appropriate care. It was foreseeable that such negligence would lead to premature device failure as well as severe, permanent, debilitating injury to patients, including JOHN FASHING.

80. As a direct and proximate result of the DEFENDANT negligence, JOHN FASHING has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical and nursing expenses, surgical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

81. As a direct and proximate result of DEFENDANT wrongful conduct, JOHN FASHING was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to suffer device-related complications; to expend money for medical care in the past and in the future; furthermore, JOHN FASHING was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time sustained

and will continue to sustain severe physical injuries, severe emotional distress, mental anguish, economic losses and other damages for which he is entitled to compensatory damages in an amount to be proven at trial.

### COUNT FIVE – NEGLIGENCE *PER SE*

82. JOHN FASHING adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows:

83. DEFENDANT have an obligation to not violate the law in the manufacture, design, testing, assembly, inspection, labeling, packaging, supplying, marketing, selling, advertising, preparing for use, warnings of the risks and dangers of the HIP SYSTEM, and otherwise distributing the HIP SYSTEM.

84. DEFENDANT acts and omissions constitute an adulteration, misbranding, or both, and constitute a breach of duty subjecting DEFENDANT to civil liability for all damages arising therefrom, under theories of negligence *per se*.

85. JOHN FASHING and his implanting surgeon, as a purchaser of the HIP SYSTEM, is within the class of persons the laws and regulations are designed to protect and JOHN FASHING's injuries are the type of harm these laws and regulations are designed to prevent.

86. As a direct and proximate result of DEFENDANT wrongful conduct, JOHN FASHING was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to suffer device-related complications; to expend money for medical care in the past and in the future; furthermore, JOHN FASHING was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time sustained and will continue to sustain severe physical injuries, severe emotional distress, mental anguish, economic losses and other damages for which he is entitled to compensatory damages in an amount to be proven at trial.

### COUNT SIX – BREACH OF WARRANTIES

87. JOHN FASHING adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows:

88. JOHN FASHING reserves the right to present evidence in support of the claim which is not presently in his possession, but which is not necessarily limited to: Instruction for Use Manuals; all written material or information provided on and/or within any and all packaging associated with JOHN FASHING's device; manufacturer's labels, package inserts; Adverse Event Reports; clinical trial data; medical literature; medical research findings and opinions; medical publications; advertisements; sales and promotional materials; internal memoranda, emails, communications and databases; sales, prescription and adverse event report databases; and communications from DEFENDANT in this action, including DEFENDANT employees, officers, directors, agents, representatives, contractors and business associates, to the public, medical community, JOHN FASHING's implanting surgeon and JOHN FASHING. Upon information, knowledge and belief, JOHN FASHING alleges the documents, instruments and/or evidence stated above are in the possession of DEFENDANT.

89. JOHN FASHING, by and through his implanting orthopaedic surgeon, used the HIP SYSTEM for its intended purpose.

90. Contrary to the express and implied warranties, at the time the DEFENDANT marketed, sold and/or distributed the HIP SYSTEM, it was not of merchantable quality or safe for their intended use as described above.

91. As a direct and proximate result of DEFENDANT wrongful conduct, JOHN FASHING was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to suffer device-related complications; to expend money for medical care in the past and in the future; furthermore, JOHN FASHING was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time sustained and will continue to sustain severe physical injuries, severe emotional distress, mental anguish, economic losses and other damages for which he is entitled to compensatory damages in an amount to be proven at trial.

**COUNT SEVEN – NEGLIGENT MISREPRESENTATION**

92. JOHN FASHING adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows:

93. At the time DEFENDANT manufactured, designed, marketed, sold and distributed the HIP SYSTEM for use by JOHN FASHING, DEFENDANT knew or should have known of the use for which the HIP SYSTEM was intended and the serious risks and dangers associated with such use of the HIP SYSTEM.

94. DEFENDANT owed a duty to treating physicians and to the ultimate end-users of the HIP SYSTEM, including JOHN FASHING, to accurately and truthfully represent the risks of the HIP SYSTEM. DEFENDANT breached that duty by misrepresenting and/or failing to adequately warn JOHN FASHING's physicians, the medical community, JOHN FASHING, and the public about the risks of the HIP SYSTEM, which DEFENDANT knew or in the exercise of diligence should have known.

95. As a direct and proximate result of DEFENDANT wrongful conduct, JOHN FASHING was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to suffer device-related complications; to expend money for medical care in the past and in the future; furthermore, JOHN FASHING was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time sustained and will continue to sustain severe physical injuries, severe emotional distress, mental anguish, economic losses and other damages for which he is entitled to compensatory damages in an amount to be proven at trial.

WHEREFORE, JOHN FASHING, prays for judgment against DEFENDANT, in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

## JURY DEMAND

PLAINTIFF HEREIN DEMANDS A TRIAL BY JURY.

RESPECTFULLY SUBMITTED,

Dated:  September 8, 2020     **LEVIN SIMES ABRAMS, LLP**

/s/Rachel Abrams
Rachel Abrams (SBN 209316)

*Attorneys for Plaintiff*

15                                                          COMPLAINT